## PUGH *v.* STATE OF MARYLAND

[No. 134, September Term, 1973.]

*Decided May 30, 1974.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE and ELDRIDGE, JJ.

*Alfred J. O'Ferrall, III, Deputy Public Defender,* for appellant.

*David B. Allen, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General,* and *Milton B. Allen, State's Attorney for Baltimore City,* on the brief, for appellee.

ELDRIDGE, J., delivered the opinion of the Court.

The question in this case is whether the prohibition against double jeopardy prevents a trial judge, moments after he intentionally rendered a "not guilty" verdict following a court trial, from changing his mind and finding the defendant guilty. We hold that it does.

Adolphus Reddick Pugh was charged by the Baltimore City Grand Jury in two indictments with violations of the narcotics statutes. Indictment number 2110 charged him with possession of cocaine, and indictment number 2111 charged him with possession of cocaine with an intent to distribute the cocaine. Pugh elected to be tried by the court instead of a jury.

At the trial, the State's evidence consisted of the testimony of two police officers. The officers stated that they observed an automobile driven by the defendant Pugh pull over to the side of a street in Baltimore City, that a Mr. Holt who had been standing upon the sidewalk walked to the driver's side of the car, that Mr. Holt handed Mr. Pugh some money, that Mr. Pugh handed Mr. Holt two packets wrapped in tinfoil, that Mr. Pugh drove off, and that Mr. Holt began walking away with the two packets. The officers then followed Mr. Holt. Immediately prior to their apprehending him, Mr. Holt threw the two packets to the pavement, and one of the officers retrieved them. The packets were found to contain cocaine. Following the testimony of the two police officers, the trial judge denied a motion for acquittal. Thereafter the defense called Mr. Holt as a witness, and he denied purchasing any narcotics from Mr. Pugh. He admitted standing on the sidewalk and then walking over to Mr. Pugh's car at the time the narcotics transaction was supposed to take place. However, he claimed that he merely borrowed a dollar from Mr. Pugh.

At the conclusion of the evidence, the defendant's attorney made a final argument. After the argument for the defense, the trial judge asked the Assistant State's Attorney, "Do you want to be heard, Mr. Iamele?" The prosecuting attorney declined to make an argument, stating that he "would

submit on the evidence." The trial judge delivered an oral resume of the evidence and then stated:

"So, the verdict is guilty on the first count. Does anybody have the indictment? Guilty in 2110, and not guilty in 2111. I don't think it's in sufficient quantity."

Immediately after the pronouncement of "not guilty" as to indictment 2111, the following took place:

"MR. IAMELE: 2111 would be the distribution charge. That's what the State is pressing in this case.

"THE COURT: I would be glad to hear from you.

"MR. IAMELE: I believe that we have evidence, ample evidence of sale. That's exactly what the State is going after. This man is a distributor of cocaine, and on the night of the 18th of February —

"THE COURT: I see what you mean.

"MR. IAMELE: — he made a sale.

"THE COURT: I was thinking of it in a different way. So, the verdict is guilty of 2111, because it was an actual sale. What I was thinking of was the possession in quantity to indicate distribution . . . ."

The court sentenced the defendant to twelve years' imprisonment on the distribution charge. On appeal to the Court of Special Appeals, the defendant claimed that the evidence was insufficient to convict him and that he had been twice placed in jeopardy. The Court of Special Appeals, rejecting both arguments, affirmed the judgment. We granted a writ of certiorari limited to the double jeopardy question.

The prohibition against twice placing a defendant in jeopardy is applicable in this State as a common law principle, and also by virtue of the Fifth and Fourteenth Amendments to the United States Constitution. *Benton v. Maryland,* 395 U. S. 784, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969); *Couser v. State,* 256 Md. 393, 260 A. 2d 334 (1970);

*State v. Barger,* 242 Md. 616, 220 A. 2d 304 (1966); *State v. Campbell and Reeves,* 7 Md. App. 538, 256 A. 2d 537 (1969). The double jeopardy prohibition is often said to consist of different but related rules, embodying several distinct pleas at common law. *See, e.g., Patton v. State of North Carolina,* 381 F. 2d 636, 643 (4th Cir. 1967), *cert. den.* 390 U. S. 905, 88 S. Ct. 818, 19 L.Ed.2d 871 (1968); *Hoffman v. State,* 20 Md. 425, 433 (1863); *State v. Barger, supra,* 242 Md. at 618-620, 635-636; Comment, *Double Jeopardy,* 75 Yale L.J. 262 (1965). Moreover, in certain contexts, the application of the prohibition is difficult and often fraught with disagreement.[1]

However, one particular aspect of the prohibition against double jeopardy has not engendered any difficulties in application or diverse opinions. From the earliest days, it has been clear that once a verdict of not guilty has been rendered at the conclusion of a criminal trial, that verdict is final and cannot be set aside. Any attempt to do so by the prosecutor is barred by what at common law was the plea of *autrefois acquit.* Thus, in *State v. Shields,* 49 Md. 301, 303 (1878), our predecessors declined to construe a statute as permitting the State to appeal a verdict of acquittal, saying:

> "It has always been a settled rule of the common law that after an acquittal of a party upon a regular trial on an indictment for either a felony or a misdemeanor, the verdict of acquittal can never afterward, on the application of the prosecutor . . . be set aside . . . ."

The Court in *Shields* went on to point out that it made no difference whether the acquittal was based on a mistake of law or a mistake of fact. *See also State v. Adams,* 196 Md. 341, 348, 76 A. 2d 575 (1950); *Cochran v. State,* 119 Md. 539,

---

1. See, e.g., the opinions of the Supreme Court grappling with the problem of a second prosecution where the first trial ended in a mistrial which was not sought by the defendant. State of Illinois v. Somerville, 410 U. S. 458, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973); United States v. Jorn, 400 U. S. 470, 91 S. Ct. 547, 27 L.Ed.2d 543 (1971); Downum v. United States, 372 U. S. 734, 83 S. Ct. 1033, 10 L.Ed.2d 100 (1963); Gori v. United States, 367 U. S. 364, 81 S. Ct. 1523, 6 L.Ed.2d 901 (1961); Wade v. Hunter, 336 U. S. 684, 69 S. Ct. 834, 93 L. Ed. 974 (1949).

544, 87 A. 400 (1913); *State v. Campbell and Reeves, supra*, 7 Md. App. at 540-541.

The United States Supreme Court, in applying the double jeopardy clause of the Fifth Amendment, has consistently set forth the same view. In *Ball v. United States*, 163 U. S. 662, 671, 16 S. Ct. 1192, 1195, 41 L. Ed. 300 (1896), involving *inter alia* an attempted second prosecution of one defendant following a verdict of acquittal rendered by a jury, the Court stated:

> "The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him [the defendant] twice in jeopardy, and thereby violating the constitution."

The Court went on to state that the verdict was final and a bar to further prosecution even though no judgment was entered on it. In *Kepner v. United States*, 195 U. S. 100, 130, 24 S. Ct. 797, 49 L. Ed. 114 (1904), a non-jury trial where there was an attempted appeal from the trial judge's verdict of not guilty, the Supreme Court reiterated that the verdict of acquittal was final regardless of whether judgment was entered, saying:

> "It is, then, the settled law of this court that former jeopardy includes one who has been acquitted by a verdict duly rendered, although no judgment be entered on the verdict, and it was found upon a defective indictment."

*See also United States v. Sisson*, 399 U. S. 267, 289-290, 90 S. Ct. 2117, 2129-2130, 26 L.Ed.2d 608 (1970); *Fong Foo v. United States*, 369 U. S. 141, 143, 82 S. Ct. 671, 672, 7 L.Ed.2d 629 (1962); *Green v. United States*, 355 U. S. 184, 188, 192, 78 S. Ct. 221, 223-224, 226, 2 L.Ed.2d 199, 61 A.L.R.2d 1119 (1957).

It is therefore settled that once the trier of fact in a criminal case, whether it be the jury or the judge, intentionally renders a verdict of "not guilty," the verdict is final and the defendant cannot later be retried on or found guilty of the same charge. And, contrary to one of the

arguments advanced by the State in the present case, it is not necessary that final judgment be entered on the docket.

These principles require a reversal of the defendant Pugh's conviction for distribution of narcotics. When the trial judge stated that "the verdict is . . . not guilty in 2111," his pronouncement constituted the rendition of a verdict under Maryland Rule 742. Nothing more is required under the rule for a "verdict" other than a deliberate pronouncement of "guilty" or "not guilty" in light of the facts and the law.

We agree with the argument in the State's brief that where a judge "obviously inadvertently" says one thing when he means something else, and immediately thereafter corrects himself, a "verdict" would not be rendered for purposes of Rule 742 or the prohibition against double jeopardy. However, the trial judge's initial statement of "not guilty" in this case was not "inadvertent" or a "slip of the tongue." Instead it represented an intended decision based upon the judge's view that the prosecution had failed to prove possession of cocaine in sufficient quantity as to indicate an intent to distribute. When the prosecution then argued that its case was grounded upon an actual sale, rather than an inference of distribution based on possession of the drug in sufficient quantity, the trial judge changed his mind. He decided that, in light of this theory of the prosecution, the evidence was sufficient to show distribution or an intent to distribute the drug.

Once a trial judge intentionally renders a verdict of "not guilty" on a criminal charge, the prohibition against double jeopardy does not permit him to change his mind.

> *Judgment of the Court of Special Appeals reversed.*
> *Judgment of the Criminal Court of Baltimore vacated, and case remanded for entry of a verdict of "not guilty" on Indictment 2111.*
> *Costs to be paid by the Mayor and City Council of Baltimore.*